**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRAD ALLEN,** | **Civil Action No. 23-798 (SDW-AME)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **ANTHONY CURETON, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

This matter comes before this Court upon Defendants Anthony Cureton, Dr. Michael L. Hemsley and Michael Russo's joint motion to dismiss Plaintiff's first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 22); Plaintiff's brief in opposition to Defendants' motion to dismiss (ECF No. 25), and Defendants' reply brief (ECF No. 28). Pursuant to Federal Rule of Civil Procedure 78(b), this Court will determine the motion to dismiss on the briefs and the record, without oral argument. For the following reasons, this Court will grant in part and deny in part Defendants' motion to dismiss.

## I. THE FIRST AMENDED COMPLAINT

For the purpose of deciding the motion to dismiss, this Court accepts the following allegations in the FAC as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (when deciding Rule 12(b)(6) motions to dismiss, courts must accept the factual allegations in the complaint as true, "but may disregard labels, conclusions, and formulaic recitations of the elements.") In April 2020, Plaintiff was diagnosed with throat cancer. (FAC, ¶ 1, ECF No. 20).

On May 13, 2020, Plaintiff underwent surgery, leaving him with an open wound on his neck. (*Id.*, ¶ 2).  Beginning approximately five months later, from October 9, 2020 through June 3, 2022, Plaintiff was a pretrial detainee confined in Bergen County Jail ("BCJ") in New Jersey. (*Id.*, ¶ 3).  Defendants were aware of Plaintiff's open neck wound and his cancer treatment.  (*Id.*, ¶¶ 5-8).  Plaintiff was assigned to the medical unit in BCJ from October 2020 through February 2021.  (*Id.*)  During the period from November 2020 through February 2021, Plaintiff was transported from BCJ five days per week for post-operative monitoring and radiation treatment at John Theurer Cancer Center in Hackensack, New Jersey.  (*Id.*, ¶ 9).  Loren Godfrey, M.D. ("Dr. Godfrey") was Plaintiff's treating oncologist.  (*Id.*, ¶ 10).

Beginning in or around December 2020, Plaintiff began experiencing intermittent episodes of coughing up blood, hemoptysis.  (*Id.*, ¶ 11).  On one such occasion, Plaintiff was transported to the emergency center of Hackensack University Medical Center.  (*Id.*, ¶¶ 12, 13). Dr. Godfrey believed the hemoptysis was caused by Plaintiff breathing dry air, and he prescribed the use of filters and a humidifier.  (*Id.*)  Medical personnel and Dr. Hemsley at BCJ repeatedly denied Plaintiff's requests for the prescribed humidifier and filters.  (*Id.*, ¶ 14).  Upon information and belief, Cureton, Russo, and/or Dr. Hemsley adopted a policy, practice, and/or custom prohibiting detainees at BCJ from using humidifiers and filters, regardless of medical necessity (the "Medical Device Policy").  (*Id.*, ¶ 15).  Medical personnel and Dr. Hemsley told Plaintiff he could use saline solution and gauze instead of a humidifier and filters.  (*Id.*, ¶ 16). As a result of being denied the prescribed humidifier and filters, Plaintiff suffered from formation of clots in his throat, which caused him pain and discomfort.  (*Id.*, ¶ 19).  Medical personnel and Dr. Hemsley told Plaintiff that the clots he was experiencing were normal and would resolve, but they did not.  (*Id.*, ¶ 21).

In or around February 2021, Plaintiff was transferred from the medical unit to the general population at BCJ, without explanation. (*Id.*, ¶ 22). The transfer placed Plaintiff's health at risk due to his medical vulnerability to COVID-19 from his open throat wound, throat cancer, and compromised immune system. Plaintiff was exposed to many more people in general population, and it was much less sanitary than the medical unit. (*Id.*, ¶ 23). When the air conditioning system failed in the summer of 2021, Plaintiff and other detainees were transferred to an overpopulated housing unit. (*Id.*, ¶ 25). Based on Plaintiff's health risks, he should have been transferred to the medical unit. (*Id.*, ¶¶ 26, 27). Upon information and belief, Cureton, Russo, and/or Dr. Hemsley, by policy, practice, or custom, failed to take reasonable prophylactic steps to reduce the risk of COVID-19 exposure to detainees, including Plaintiff, who suffered from compromised immune systems from cancer (the "COVID Policy"). (*Id.*, ¶¶ 28, 29). Within a short time of the transfer, Plaintiff and 25 detainees in his housing unit contracted COVID-19. (*Id.*, ¶ 30). Due to his underlying health condition, Plaintiff experienced more severe symptoms of coughing, muscle aches, and shortness of breath. He was quarantined for thirty-one (31) days, but most other detainees were quarantined only for approximately ten (10) days. (*Id.*, ¶ 31). When Plaintiff had COVID-19, his illness caused delay in his cancer treatments. (*Id.*, ¶ 33). The Medical personnel and Dr. Hemsley failed to provide Plaintiff with adequate care for his shortness of breath, now a chronic condition. (*Id.*, ¶ 32).

## II. DISCUSSION

### A. Legal Standard: Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The moving party bears the burden of showing that the plaintiff

failed to state a claim.  *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021)  (quoting Fed. R. Civ. P. 8(a)(2)).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570)). To meet the plausibility requirement, "the court need only be able to draw a 'reasonable inference' that the defendant has broken the law.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)).  A court should  determine "plausibility by drawing inferences from the facts pleaded using its experience and common sense."  *Thomas v. Christie*, 655 F. App'x 82, 84 (3d Cir. 2016) (citing *Argueta v. U.S. Immigration & Customs Enf't,* 643 F.3d 60, 69 (3d Cir. 2011)).  "While 'accept[ing] all of the complaint's well-pleaded facts as true,' the district court 'may disregard any legal conclusions.'"  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)).

### B.  Standard of law:  42 U.S.C. § 1983

 "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quoting *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  A plaintiff must also "demonstrate a defendant's "personal involvement in the alleged wrongs." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  The law governing supervisory liability under Section 1983 arises out of the requirement that each defendant have personal involvement in the alleged constitutional violation.  Thus,

> [t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original).

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010).

Defendants do not contest that they are state actors under § 1983.  Therefore, this Court must begin by identifying the constitutional violations alleged.  The FAC contains four counts, all arising under the Fourteenth Amendment Due Process Clause, based on claims of inadequate medical care and conditions of confinement that amount to punishment.

### C.     Inadequate Medical Care Claims

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  Courts in the Third Circuit apply the Eighth Amendment standard for inadequate medical care claims to claims arising under the Fourteenth Amendment.  *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) ("[A] pretrial detainee is not entitled to Eighth Amendment protections, but nevertheless a

pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care") (quoting *Natale*, 318 F.3d at 581).  To state a claim of inadequate medical care, an inmate must allege facts showing "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Estelle v. Gamble*,  429 U.S. 97, 106 (1976).  A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention," *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  "Deliberate indifference can occur when prison officials 'intentionally deny[ ] or delay[ ] access to medical care or interfer[e] with the treatment once prescribed.'" *Leisure v. Lancaster Cnty. Prison*, 750 F. App'x 89, 91 (3d Cir. 2018) (quoting *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle*, 429 U.S. at 104-05 (internal quotation marks omitted in *Leisure*)).

If a complaint alleges inadequate medical treatment rather than complete denial of treatment or delay in providing medical care, courts "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).  In this scenario, "the plaintiff must allege that the treatment violated professional standards of care, in addition to alleging that the defendant acted with the requisite state of mind [deliberate indifference] when providing that inadequate care." *McGinnis v. Hammer*, 751 F. App'x 287, 290 (3d Cir. 2018) (citing *Pearson*, 850 F.3d at 535; *see e.g., Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020)).  According to the amended complaint, Dr. Hemsley opined that saline and gauze were sufficient to treat Plaintiff's intermittent coughing up blood from his neck wound.  Plaintiff has not alleged that treatment of

his neck wound with saline and gauze fell below the professional standard of care.  Lacking this essential element of an inadequate medical care claim, the FAC fails to state a claim.

Plaintiff also alleges, in a conclusory manner, that he was not provided adequate medical care for shortness of breath after he was infected with COVID-19.  Once again, to state a claim of deliberate indifference to a serious medical need where some treatment was provided, Plaintiff must allege, in a non-conclusory manner, that the care he received fell below professional standards of care, and Defendants were deliberately indifferent in providing such care.  Plaintiff has not alleged such in his FAC.  Therefore, this Court will dismiss without prejudice Plaintiff's claims of inadequate medical care.

### D.      COVID-19 Conditions of Confinement Claims

"[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Prison "conditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster."  *Id.* (quoting *Bell*, 441 U.S. at 540)).  Prison conditions may amount to punishment "'when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"  *Id.* at 373 (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).  Courts must consider "whether the Government imposed the challenged conditions for the express purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose but excessive in relation to its purpose."  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 328 (3d Cir. 2020).

Here, the alleged "punishment" was transferring Plaintiff out of the medical unit and into general population, despite his medical vulnerability putting him at higher risk of death or severe symptoms if infected by COVID-19. The alleged punishment, the transfer, resulted in Plaintiff's exposure to and infection with COVID-19, which caused him to suffer from more severe COVID-19 symptoms than otherwise healthy inmates, and chronic shortness of breath. "In evaluating a … claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution. *Bistrian*, 696 F.3d at 373 (quoting *Stevenson*, 495 F.3d at 68) (quoting *Rapier*, 172 F.3d at 1005)). Plaintiff alleged he was not given any reason for being transferred out of the medical unit to general population in February 2021. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It is reasonable to infer that because Plaintiff was not provided an explanation for his transfer out of the medical unit, the risk from COVID-19 he was exposed to in general population was excessive in light of the purpose served by his transfer. Therefore, this Court denies Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process challenge to Defendants' alleged inadequate COVID-19 policy.

## III.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss Plaintiff's first amended complaint will be granted in part and denied in part. Plaintiff's Fourteenth Amendment inadequate medical care claims will be dismissed without prejudice, and Plaintiff's Fourteenth Amendment conditions of confinement claims may proceed. Plaintiff may amend his complaint regarding the Fourteenth Amendment conditions of confinement claims within 45 days.

An appropriate Order follows.

Date:_____, 2024            July 19

_____
Hon. Susan D. Wigenton,
United States District Judge